IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　*Plaintiff*,<br><br>v.<br><br>JOSE ALBERTO RAMIREZ,<br><br>　　　　*Defendant*. | Case No. 0:26-cr-00042-DWF-JFD<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO REVOKE DETENTION ORDER** |

## <u>INTRODUCTION</u>

The Bail Reform Act is structured around the principle that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Detention is permitted only when the government demonstrates that no condition or combination of conditions can reasonably assure the safety of the community and the defendant's appearance. 18 U.S.C. § 3142(e); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The government's opposition advances three principal arguments for detention: the nature of the alleged electronic communications, Mr. Ramirez's past criminal history and failures to appear, and his conduct during arrest and custodial processing. Each of those considerations warrants attention. But none establishes the statutory requirement that no set of enforceable conditions could reasonably manage the risks identified.

The charged conduct consists of three electronic messages transmitted within approximately two minutes on January 15, 2026. The indictment alleges no travel toward the alleged recipient, no attempt to locate the individual in person, no possession of weapons,

1

and no conduct suggesting that the situation extended beyond that brief exchange. The alleged risk therefore arises entirely from electronic communication.

The defense has proposed a structured supervision plan tailored directly to that risk. The proposed conditions include GPS-monitored home detention, third-party custodial supervision, restricted cellular use, elimination of unsupervised internet access, and a comprehensive no-contact order.[1] These are standard tools of federal pretrial supervision designed to prevent precisely the type of conduct alleged here.

The government's analysis focuses primarily on historical conduct and arrest-day events rather than the central statutory question: whether available supervision conditions can reasonably manage the risks identified. Instead, the opposition effectively asks the Court to conclude that Mr. Ramirez cannot be supervised under any set of conditions available in federal pretrial practice—an extraordinary conclusion typically reserved for defendants engaged in ongoing violent conduct, organized criminal activity, large-scale trafficking offenses, or crimes involving firearms where supervision cannot realistically mitigate the risk.

This record does not resemble those cases.

For nearly three years, Mr. Ramirez lived and worked under structured TASC probation supervision and complied with the program's reporting and monitoring requirements until the

---

[1] Counsel communicated with U.S. Probation Officer Kathia Dirksen, who is assigned to Mr. Ramirez's case, regarding potential supervision conditions. Officer Dirksen indicated that strict no-contact conditions prohibiting any direct or indirect communication with the alleged victim have assisted in similar cases and provided the following example language: "You shall have no contact with the victim (including letters, communication devices, audio or visual devices, visits, or any contact through a third party) without prior consent of the probation officer."

events giving rise to this case occurred. That recent period of supervision provides the most probative evidence of Mr. Ramirez's ability to comply with court-ordered conditions today. The conditions proposed here impose a more restrictive and closely monitored framework than the probation supervision under which Mr. Ramirez successfully lived and worked during that time.

When the statutory question is framed correctly—whether enforceable conditions can reasonably assure community safety and appearance—the government has not met its burden. On this record, structured supervision is not only feasible; it is the outcome most consistent with the Bail Reform Act.

## ARGUMENT

### I.   THE GOVERNMENT HAS NOT SHOWN THAT NO CONDITION OR COMBINATION OF CONDITIONS CAN REASONABLY ASSURE COMMUNITY SAFETY OR THE DEFENDANT'S APPEARANCE

The government's opposition emphasizes the seriousness of the alleged communications and highlights aspects of Mr. Ramirez's past criminal history and prior failures to appear. Those considerations are relevant under the Bail Reform Act. But the statute does not authorize detention based solely on troubling allegations or a defendant's historical record viewed in isolation.

The governing question is narrower and more concrete: whether any condition or combination of conditions can reasonably assure community safety and the defendant's appearance. 18 U.S.C. § 3142(e). Pretrial detention is justified only when the government demonstrates that available supervision conditions cannot reasonably manage the risks it identifies. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Measured against that standard, the government's arguments do not establish that detention is warranted. The Bail Reform Act does not ask whether the allegations raise concern or whether a defendant has a troubled history. It asks a more concrete question: whether enforceable supervision conditions can reasonably manage the risks identified by the government. As the sections below explain, the record demonstrates that they can.

**A. The Charged Conduct Is Limited to a Brief Electronic Communication and Does Not Demonstrate Ongoing Dangerousness.**

The charged conduct in this case consists of three electronic messages sent within an approximately two-minute period on January 15, 2026. The government highlights the inflammatory language contained in those messages. But the indictment alleges no travel toward the recipient, no attempt to locate the individual in person, no possession of weapons, and no follow-up conduct of any kind. The alleged risk therefore arises entirely from a short series of electronic communications transmitted during a brief moment in time. The government identifies no conduct after those messages suggesting that the situation continued or escalated.

That distinction matters under the Bail Reform Act. Detention based on dangerousness is ordinarily reserved for circumstances in which the alleged conduct reflects an ongoing pattern of violence, escalation toward physical harm, or behavior suggesting that supervision conditions cannot realistically mitigate the risk. Nothing in the record suggests that type of continuing threat here. The government does not allege that Mr. Ramirez attempted to act on the statements contained in the messages, attempted to

4

contact the alleged recipient again, or engaged in any conduct suggesting that the situation extended beyond the brief window during which the messages were sent.

Instead, the alleged conduct appears to have occurred during an emotionally charged moment following widely reported local events involving deaths connected to immigration enforcement activity. The record reflects that many individuals expressed anger and distress online during that period. After the messages were sent, Mr. Ramirez returned to his ordinary routine. He continued working, remained compliant with probation supervision, and engaged in no conduct suggesting an attempt to act on the statements contained in the messages.

Equally important, the risk identified by the government arises from a specific communication channel. The defense's proposed conditions directly address that mechanism. The proposed release plan includes home detention with electronic monitoring, restricted cellular phone use, elimination of unsupervised internet access, and a strict no-contact order. These safeguards remove the very means through which the alleged communications occurred.

Under those circumstances, the relevant question is whether those enforceable conditions can reasonably manage the risk the government identifies. Nothing in the government's opposition explains why those safeguards would be insufficient. Instead, the opposition asks the Court to infer ongoing dangerousness from a brief episode of electronic communication that did not lead to any action in the physical world.

Nothing in the defense position minimizes the seriousness of the language alleged in the indictment. The question under the Bail Reform Act, however, is whether enforceable

5

conditions can reasonably manage the risk identified by the government. On this record, the charged conduct does not demonstrate the type of continuing danger that justifies pretrial detention under § 3142.

### B. The Government's Flight Risk Argument Relies on Outdated History and Ignores the Most Probative Evidence of Compliance (TASC).

The government's principal argument for detention is Mr. Ramirez's history of failures to appear and probation violations in earlier cases. The defense does not dispute that Mr. Ramirez had several failures to appear during an earlier period of his life. But the detention analysis requires more than reciting a defendant's past. The Court must determine whether those past events reliably predict how the defendant will behave under present conditions of supervision.

Here, the government relies primarily on incidents that occurred years earlier, largely when Mr. Ramirez was in his late teens and early twenties. The record reflects that this period of his life was marked by significant instability. Pretrial release materials note, for example, that Mr. Ramirez experienced periods of homelessness as recently as five years ago. Failures to appear that occurred during a period of personal instability say little about how an individual will respond to structured supervision years later under materially different life circumstances. The most probative evidence of how Mr. Ramirez will behave under court supervision is his most recent period of structured supervision.

6

Since March 2023, Mr. Ramirez has been serving a 36-month term of probation supervised through the TASC program.[2] During that period, supervising authorities did not initiate violation proceedings based on noncompliance until shortly before the scheduled end of his probation term, when the events giving rise to this case occurred. For nearly three years, Mr. Ramirez remained under active supervision and complied with the reporting, monitoring, and accountability requirements imposed upon him.

Supervision through the TASC program involves structured case-management oversight designed for individuals with prior supervision difficulties. Participants are subject to regular reporting obligations, monitoring requirements, and heightened accountability intended to ensure compliance with court-ordered conditions. Mr. Ramirez remained in compliance with those requirements throughout the supervision period until the events giving rise to this case occurred.

Equally important, Mr. Ramirez complied with that supervision while being monitored in another jurisdiction through the Interstate Compact. His supervision therefore required adherence to conditions outside the jurisdiction in which his case was pending, a circumstance closely analogous to federal pretrial supervision. His successful compliance under that framework directly undermines the suggestion that he cannot comply while supervised outside the charging jurisdiction.

---

[2] TASC probation involves structured case-management supervision requiring regular reporting, treatment compliance, and monitoring designed to ensure accountability and compliance with court-ordered conditions. *See About TASC*, Treatment Alternatives for Safe Communities, https://www.tasc.org/ (last visited Mar. 15, 2026).

The government's opposition focuses instead on failures to appear from a much earlier period of Mr. Ramirez's life. What the government does not explain is why those older events should be viewed as more predictive of future compliance than the structured supervision Mr. Ramirez successfully completed over the past three years.

The opposition also does not explain why the proposed conditions of release would be insufficient to mitigate any remaining concern. The defense proposes electronic home monitoring and structured supervision conditions that significantly reduce the possibility of nonappearance. Those safeguards provide a level of monitoring and accountability comparable to—and in some respects greater than—the supervision framework under which Mr. Ramirez has already demonstrated compliance.

Under § 3142, the Court's task is to determine whether enforceable conditions can reasonably assure the defendant's appearance. The most reliable evidence on that question is Mr. Ramirez's recent record of structured supervision. That record demonstrates that when Mr. Ramirez is placed within a system of accountability and monitoring, he complies.

**C. Arrest-Day Conduct Does Not Establish Future Dangerousness Under § 3142.**

The government devotes substantial attention to Mr. Ramirez's behavior during the execution of the arrest warrant and the hours that followed. The opposition includes numerous video exhibits documenting his conduct during transport and custodial processing. That Mr. Ramirez became agitated, refused certain booking procedures, and argued with officers during his arrest is not disputed.

The question before the Court, however, is not whether Mr. Ramirez behaved perfectly during the stressful process of being taken into federal custody. The question under the Bail

8

Reform Act is whether enforceable conditions of supervision can reasonably assure community safety and Mr. Ramirez's appearance going forward.

The government's exhibits capture only a brief period on a single day. The government characterizes this conduct as threatening or aggressive toward officers. The videos depict an individual reacting emotionally during a sudden and unexpected arrest. Mr. Ramirez was unexpectedly arrested at his workplace by federal agents executing a warrant issued from another jurisdiction. When agents arrived at the Einstein Bagels where Mr. Ramirez worked, he did not attempt to hide or flee. According to his employer, when she informed him that federal agents were present, Mr. Ramirez immediately went out to meet them. He did not attempt to evade arrest.

His employer, who has supervised him for more than a year, describes a markedly different pattern of conduct in the community. (Ex. 3.) She reports that Mr. Ramirez has been a reliable and trusted employee who works approximately thirty-two hours per week, interacts respectfully with coworkers and customers, and has earned raises and consideration for promotion. She also notes that law enforcement officers regularly patronize the store and that Mr. Ramirez has consistently treated them with professionalism and respect. That sustained record of responsible conduct is far more probative of Mr. Ramirez's character and reliability than a brief period of agitation during the shock of an unexpected federal arrest.

The government's exhibits therefore present a narrow snapshot of Mr. Ramirez during an unusually stressful moment. He was arrested at work weeks after the alleged communications at issue in this case, transported by federal agents, and processed through multiple custodial facilities. A moment of panic or frustration during that process does not

9

establish that Mr. Ramirez poses a continuing danger to the public or that he cannot comply with court-ordered supervision.

The government's focus on arrest-day conduct also overlooks the most relevant evidence regarding Mr. Ramirez's ability to comply with supervision: the three years preceding this arrest. During that time, Mr. Ramirez remained under structured TASC probation supervision while maintaining steady employment and stability in the community.

The Bail Reform Act requires the Court to determine whether conditions of release can reasonably assure community safety and the defendant's appearance going forward. Several hours of agitation during custodial processing do not negate three years of sustained compliance with probation supervision, steady employment, and stable conduct in the community. The government also does not explain why the structured conditions proposed here, including electronic monitoring, restricted communications, and home detention, would be insufficient to manage the concerns it identifies. Arrest-day conduct during a stressful custodial process does not establish that enforceable supervision conditions cannot reasonably assure community safety or Mr. Ramirez's appearance.

### D. The Proposed Conditions Directly Address the Concerns Identified by the Government.

The Bail Reform Act does not require the Court to eliminate every conceivable risk. It requires the Court to determine whether conditions of release can reasonably assure the safety of the community and the defendant's appearance. 18 U.S.C. § 3142(c). Courts are directed to impose the least restrictive conditions that will achieve those objectives.

The defense has proposed a structured supervision plan tailored to the specific concerns raised in the government's opposition. Those conditions include home detention with electronic monitoring, third-party custodial supervision, restricted cellular phone use, elimination of unsupervised internet access, and a strict no-contact order prohibiting any communication with the alleged recipient.

These conditions directly address the mechanism through which the charged conduct occurred. The alleged conduct in this case arose entirely through electronic communication. Restricting unsupervised internet and cellular access while placing Mr. Ramirez on home detention with electronic monitoring substantially limits the ability to engage in the conduct alleged while providing continuous oversight of his location.

Electronic monitoring also mitigates any concern regarding appearance. Under such conditions, Mr. Ramirez's location would be continuously monitored, and any unauthorized departure from his residence would be immediately detected by Pretrial Services. Courts routinely rely on electronic monitoring to manage appearance concerns in cases involving far more serious allegations.

The proposed supervision plan also mirrors the structure under which Mr. Ramirez has already demonstrated compliance. As discussed above, Mr. Ramirez remained under intensive TASC probation supervision for nearly three years while maintaining employment and complying with the program's reporting and monitoring requirements. That history indicates that when Mr. Ramirez is placed within a structured system of accountability and supervision, he follows court-imposed rules.

11

Nothing in the record suggests that the combination of conditions proposed here would be ineffective to manage the concerns identified by the government. The Bail Reform Act authorizes detention only when no condition or combination of conditions can reasonably assure safety and appearance. Where the alleged conduct consists of a brief episode of electronic communication and the proposed conditions directly restrict the means through which that communication occurred, the government has not shown that detention is necessary.

## **CONCLUSION**

The government has not shown that no condition or combination of conditions can reasonably assure community safety and the defendant's appearance. Because the proposed conditions directly address the concerns identified in the government's opposition, continued detention is not warranted under the Bail Reform Act. The Court should therefore grant the motion and order Mr. Ramirez released subject to appropriate conditions.

Dated: March 15, 2026                                 Respectfully submitted,

                                                        **/s/ *Sarah Gad***
                                                        Sarah R. Gad, 0403328
                                                        Gad & Gad Law Offices LLP
                                                        Attorney | Founding Partner
                                                        8 E 25th Street
                                                        Minneapolis, MN 55404
                                                        Telephone: (612) 412-1710
                                                        sarah@gadlawoffice.com