**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,
*Plaintiff,*

v.

JOSE ALBERTO RAMIREZ,
*Defendant.*

Case No. 26-cr-42 (DWF/JFD)

# DEFENDANT'S POSITION REGARDING SENTENCING

**October 7, 2026**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

I. SENTENCING POSITION AND GUIDELINE CALCULATION .......... 2

II. UNRESOLVED PSR MATTERS AND RULE 32 POSITION .......... 3

A. Paragraph 66: Disputed Workplace Allegations .......... 3

B. Paragraphs 13 and 93: Arrest Conduct .......... 4

C. Paragraph 96: Recommendation for Additional Custody .......... 5

D. Paragraphs 73 through 75: Flawed Aggregate Sentencing Data .......... 5

E. No Evidentiary Hearing is Requested .......... 6

III. LIBERTY, PROPORTIONALITY, AND SECTION 3553(a) REQUIRE TIME SERVED .......... 6

A. Nearly Nine Months in Custody is a Substantial Punishment .......... 6

B. The Offense Was Serious, But Its Actual Severity Must Be Measured by What Happened Here .......... 7

C. The Advisory Range is Driven by Stale Criminal History, Not the Present Offense Conduct .......... 10

D. Individualized History, Acceptance of Responsibility, and Treatment Needs .......... 11

E. A Concrete Release Plan and Strict Supervision Adequately Address Risk .......... 13

F. The Present Record Contains No Victim Sentencing Position .......... 14

G. The Joint Recommendation Warrants Substantial Weight .......... 14

H. Aggregate Sentencing Data Lacks Necessary Context .......... 14

IV. PROPOSED SENTENCE .......... 16

CONCLUSION .......... 17

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br>v.<br>JOSE ALBERTO RAMIREZ,<br>*Defendant.* | Case No. 26-cr-42 (DWF/JFD)<br><br>**DEFENDANT'S POSITION REGARDING SENTENCING** |

## INTRODUCTION

By the time Jose Alberto Ramirez appears for sentencing, he will have spent 271 continuous days in federal custody. The conduct underlying this confinement consists of two text messages and one voicemail sent within a two-minute window shortly after 6:00 a.m. *Final PSR* ¶¶ 9-10. Mr. Ramirez accepts responsibility for those communications and the resulting fear. *Id.* ¶ 17. He has now been incarcerated for nearly nine months. This period of detention is the longest of his life by a substantial margin. *Id.* ¶ 95.

Both parties agree the appropriate sentence is time served. That recommendation rests on an individualized record. Mr. Ramirez is 28 years old. Alongside documented childhood trauma and anxiety, he has a six-year relationship, a verified home, immediate employment, and concrete vocational goals. *Final PSR* ¶¶ 51-65. Furthermore, he faces three years of enforceable federal supervision directed at the specific risks identified in the PSR. *Final PSR* ¶¶ 97-103; Plea Agreement ¶ 9. The Court should give effect to the parties' considered judgment. A sentence of time served, followed by three years of federal supervision, honors the statutory mandate of 18 U.S.C. § 3553(a).

## I. SENTENCING POSITION AND GUIDELINE CALCULATION

The defense accepts the PSR's calculation of a total offense level of 17 and a criminal-history category V, which produces an advisory range of 46 to 57 months. *Final PSR* ¶¶ 29, 43, 72. The defense requests a downward variance under 18 U.S.C. § 3553(a) to a sentence of time served, followed by three years of supervised release.

The offense of conviction carries no mandatory minimum term of imprisonment and a statutory maximum of five years. 18 U.S.C. § 875(c). It is therefore a Class D felony. 18 U.S.C. § 3559(a)(4). A sentence of time served is legally available, and the three-year term of supervised release jointly recommended by the parties is the maximum term authorized for a Class D felony. 18 U.S.C. § 3583(b)(2). This proposal combines a substantial period of actual incarceration with the maximum period of federal supervision authorized by statute, fully satisfying the requirements of 18 U.S.C. § 3553(a)(3).

Mr. Ramirez lacks the ability to pay a fine. *Final PSR* ¶ 70. Accordingly, the defense requests that no fine be imposed. The present record identifies no restitution amount supported by victim loss information. If restitution is later sought, any award must be established in accordance with 18 U.S.C. §§ 3663A and 3664. *Id.* ¶¶ 78, 82-86. He will pay the mandatory $100 special assessment.

The Court must begin with a correct Guidelines calculation and then make an individualized assessment under § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). No extraordinary circumstances are required to justify a variance. *Id.* at 47. In making that individualized assessment, the Court may consider the full range of reliable

information concerning Mr. Ramirez's history and characteristics. *Pepper v. United States*, 562 U.S. 476, 488 (2011).

Section 3553(a) requires the Court to impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter crime, protect the public, and provide needed treatment. That parsimony command limits imprisonment to what is strictly necessary to serve those purposes.

Mr. Ramirez has served 271 days in federal custody. That period has already imposed substantial punishment and specific deterrence. The record does not show that additional incarceration is necessary, and time served is sufficient.

## II. UNRESOLVED PSR MATTERS AND RULE 32 POSITION

The final PSR incorporated the defense's requested corrections regarding Mr. Ramirez's written acceptance of responsibility, the chronology of his prior convictions, the custody estimate, and the proposed digital safeguards. Final PSR ¶¶ 17, 95-96, 102. The defense does not renew its resolved objections. The following matters remain for resolution.

### A. Paragraph 66: Disputed Workplace Allegations

Paragraph 66 alleges Mr. Ramirez sent threatening messages after his employment with Velocity Esports ended, quoting remarks about contacting Homeland Security regarding an employee's immigration status and striking a person in the store. No criminal charges resulted.

Mr. Ramirez disputes that these communications demonstrate an intent to harm anyone or a pattern of planned violence. While 18 U.S.C. § 3661 and USSG § 1B1.4

permit the consideration of uncharged conduct, a contested PSR allegation is not evidence. The government bears the burden to prove disputed aggravating facts before the Court may rely on them at sentencing. *See United States v. Willis*, 168 F.4th 1119, 1122 (8th Cir. 2026); *United States v. Sam*, 170 F.4th 670, 673 (8th Cir. 2026). The government has not met that burden on the present record.

Unless the government meets its evidentiary burden, the defense requests an express determination of nonreliance under Federal Rule of Criminal Procedure 32(i)(3)(B).

**B. Paragraphs 13 and 93: Arrest Conduct**

The defense does not contest the factual narrative of the arrest. Mr. Ramirez was confrontational. He used vulgar language, threatened litigation, stated he would publish the agents' names on social media, and physically resisted fingerprinting. He has admitted and apologized for this behavior. *Final PSR* ¶¶ 13, 15, 17.

The defense objects to the PSR's inference that this noncompliance establishes an intent to inflict physical injury. Hostile obstruction during a sudden arrest is serious, but it is not calculated physical violence.

The defense requests the Court evaluate the arrest based exclusively on the documented actions and reject broader aggravating characterizations not established by those facts. Alternatively, the defense requests a formal determination of nonreliance under Rule 32(i)(3)(B).

### C. Paragraph 96: Recommendation for Additional Custody

Paragraph 96 recommends "some" additional custody beyond sentencing, but it specifies no actual term and identifies no statutory purpose that Mr. Ramirez's 271 days of pre-sentence custody, followed by three years of strict supervision, would fail to serve. This is a sentencing recommendation, not a historical fact requiring resolution under Rule 32.

The Court applies 18 U.S.C. § 3553(a) independently. The Probation Office fails to articulate what statutory objective further incarceration would achieve that time served and three years of supervised release will not. Because the recommendation supplies no record-based justification for additional confinement, it provides no basis for the Court to conclude that further incarceration is necessary under § 3553(a). Time served is sufficient.

### D. Paragraphs 73 through 75: Flawed Aggregate Sentencing Data

The defense does not dispute the PSR's arithmetic, but strongly objects to using an isolated, seven-defendant Category V sample as an aggravating benchmark. The sample provides no meaningful factual comparator. It tells the Court nothing about those defendants' actual offense conduct, intent, specific criminal histories, time already served, treatment needs, release plans, cooperation, or plea agreements. The fourteen-defendant Category III data in footnote 3 has the same limitation.

Raw numbers stripped of case-specific context cannot establish what § 3553(a)(6) requires here: a warranted comparison among defendants with similar records found

guilty of similar conduct. The defense asks the Court to recognize this sample as incomplete and incomparable and assign it no independent aggravating weight.

### E. No Evidentiary Hearing is Requested

The defense does not request an evidentiary hearing on the present record. The remaining disputes can be resolved on the existing record or through express determinations of nonreliance. See D. Minn. LR 83.10(f). If the Government seeks to establish a disputed aggravating allegation through evidence outside the existing record, the defense requests reasonable notice and an opportunity to contest that evidence.

The defense further requests that the Court's determinations on these matters be appended to the final PSR, as required by Federal Rule of Criminal Procedure 32(i)(3)(C).

## III. LIBERTY, PROPORTIONALITY, AND SECTION 3553(a) REQUIRE TIME SERVED

### A. Nearly Nine Months in Custody is a Substantial Punishment

Mr. Ramirez was arrested on January 29, 2026. By his October 27 sentencing, he will have been in federal custody for 271 days. Prior to this case, he had never served a federal prison sentence, and his longest prior detention of any kind was 219 days. *Final PSR* ¶ 95. This is the longest continuous confinement of his life.

A time-served sentence in this context is a severe sanction. For nine months, Mr. Ramirez has been removed from his home, his partner, his employment, and his community. Jail records reflect three verbal warnings for behavioral concerns, but no formal write-ups or loss of privileges. *Id.* ¶ 46. This 271-day period of continuous custody has already imposed substantial punishment and specific deterrence.

Section 3553(a) prohibits incarceration greater than necessary. Nothing in the PSR identifies what an additional term of imprisonment would accomplish that 271 days of custody has not, particularly when followed by three years of supervised release, mental-health evaluation and treatment if recommended, substance testing, digital monitoring, a strict no-contact order, and immediate employment. The statutory purposes of sentencing can be satisfied without extending Mr. Ramirez's incarceration.

General deterrence does not require a Guidelines sentence. A federal felony conviction, 271 days of continuous incarceration, and three additional years under enforceable federal supervision communicate a serious consequence for threatening conduct. That conclusion is reinforced here by the Government's own agreement that time served is sufficient. A sentence need not approach the advisory range to promote respect for the law or deter others; it must impose no more punishment than reasonably necessary to accomplish those purposes. See 18 U.S.C. § 3553(a)(2)(A)-(B).

### B. The Offense Was Serious, But Its Actual Severity Must Be Measured by What Happened Here

Mr. Ramirez acknowledges the gravity of the offense. Threatening a federal agent and invoking the agent's family is undoubtedly serious. The communications caused fear, and he accepts responsibility for that consequence. *Final PSR* ¶ *17.* The defense does not ask the Court to call the offense harmless, protected, or trivial. It asks the Court to sentence the offense that actually occurred.

The factual basis for the conviction is limited to three communications sent shortly after 6:00 a.m. In those messages, Mr. Ramirez stated he knew where the agent's family lived, told the agent to "get home safe and fast," and said "your day will come." *Final*

*PSR* ¶¶ *9-10.* The text contains no explicit reference to physical violence, weapons, or a specific timeline. Correspondingly, the PSR documents no physical approach, travel toward the agent, weapons, or injury.

This distinction is relevant to sentencing under 18 U.S.C. § 3553(a)(1). Section 875(c) applies to a broad range of threatening communications. Published Eighth Circuit decisions illustrate the spectrum of conduct prosecuted under the statute. *See United States v. Leveke*, 38 F.4th 662, 666-69 (8th Cir. 2022) (explicit threats of a mass shooting and statements about killing politicians); *United States v. Dierks*, 978 F.3d 585, 587-89 (8th Cir. 2020) (repeated threats to "flatline" and "end" a Senator); *United States v. Ivers*, 967 F.3d 709, 717-20 (8th Cir. 2020) (claims of planning "50 different ways" to kill a federal judge during an extended campaign).[1]

The defense does not cite these decisions to compare final prison terms, but to show the breadth of § 875(c). The statute encompasses explicit threats of murder and detailed plans of violence. Section 3553(a)(1) requires the Court to evaluate the specific nature of the offense before it. The three messages in this record lack the explicit, violent aggravating factors present in more severe prosecutions under this statute.

---

[1] * The defense incorporates by reference the comparison of true-threat authorities set forth in *Defendant's Objections to the Report and Recommendation*, ECF No. 39 at 6–7 & n.1, solely for purposes of the proportionality analysis required by 18 U.S.C. § 3553(a)(1). Those authorities illustrate the materially more aggravated end of threatening conduct: express threats to kill or seriously injure, references to shootings and bombs, identified weapons and methods, and plans for carrying out violence. The comparison does not diminish Mr. Ramirez's acceptance of responsibility or challenge his conviction. It demonstrates why the seriousness of this offense must be measured by the words and conduct actually established here.

The Sentencing Guidelines reflect the same structural distinction. Section 2A6.1(b)(1) provides a six-level enhancement when the offense involves conduct evidencing an intent to carry out the threat. Probation evaluated that enhancement because Mr. Ramirez's phone reflected a map search for the agent's residence. After reviewing the evidence, Probation found insufficient proof of an intent to carry out the threats and applied no enhancement. *Final PSR ¶ 20.* While the map search remains part of the record, the Court should not impose a sentence that functions as if the six-level enhancement had been proven.

The PSR also notes unanswered calls to two other agents and four deleted messages to an Assistant United States Attorney. *Final PSR ¶ 12.* The content of the deleted messages is unrecovered. Additionally, Paragraph 8 describes stolen government property, public posting of agents' personal information, and suspicious activity near agents' homes. None of that conduct is attributed to Mr. Ramirez. Under 18 U.S.C. § 3661, the Court may consider broad information, but unproven message content and the acts of third parties cannot form the basis for an aggravated sentence.

The established aggravating facts are already incorporated into the Guidelines calculation. Mr. Ramirez received a two-level increase for making more than two threats and a six-level increase because the victim was a government employee. *Final PSR ¶¶ 21-22.* The Court can give those factors full effect while keeping the sentence anchored strictly to the proven conduct.

### C. The Advisory Range is Driven by Stale Criminal History, Not the Present Offense Conduct

The defense does not dispute the point calculation, but the resulting Category V classification overstates Mr. Ramirez's actual risk. When negotiating this plea, the parties anticipated a Category III criminal history and a 30-to-37-month range. Plea Agreement ¶ 7. The final PSR places him in Category V, producing a range of 46 to 57 months. *Final PSR* ¶¶ 29, 43, 72-73.

That change is not the result of newly established aggravating offense conduct. The offense level remains 17. The 16-to-20-month upward shift in the advisory range is driven by the criminal-history category.

The Category V score also compresses an important chronology. Every adult act that produced the listed prior convictions occurred between 2017 and May 2020. *Id.* ¶¶ 35-40, 95. The two prior violent episodes identified by Probation stem from conduct that is now seven and nine years old. *Id.* ¶¶ 37, 39, 95. Delayed court dates and subsequent probation revocations do not alter the age of the underlying behavior. More than six years have passed since Mr. Ramirez's last conviction-producing conduct.

The defense acknowledges this record, but the Court should recognize its limits. The Probation Office expressly notes that Category V may overstate the severity of Mr. Ramirez's history because his prior custodial terms were brief and largely concurrent. *Id.* ¶ 95.

That observation remains fully relevant under the current Guidelines. Amendment 836 removed the former departure provisions but expressly stated that the change was intended to be outcome-neutral and that facts previously identified as grounds for

departure may continue to support a variance under 18 U.S.C. § 3553(a). USSG App. C, Amend. 836. The Court may therefore give effect to Probation's own assessment through the variance analysis.

Criminal history properly informs both the seriousness of a defendant's record and the assessment of future risk. It does not authorize renewed punishment for old conduct. A 46-to-57-month sentence driven principally by this Category V score would give disproportionate weight to a closed period of conduct and insufficient weight to the present offense, the time already served, and Mr. Ramirez's present circumstances.

### D. Individualized History, Acceptance of Responsibility, and Treatment Needs

Mr. Ramirez’s acceptance of responsibility is specific. He admits sending the communications, acknowledges the fear caused by referencing the agent's family, accepts responsibility for his conduct during arrest, and apologizes. *Final PSR ¶ 17.* He does not claim that anxiety, stress, or childhood hardship excuse his actions. *Id.*

However, 18 U.S.C. § 3553(a)(1) requires the Court to consider his full history and characteristics to evaluate risk and structure appropriate conditions. Probation assessed an ACE (Adverse Childhood Experiences) score of 8, documenting childhood abuse, neglect, domestic violence, household substance abuse, and parental incarceration. *Final PSR ¶¶ 58-59.* He experienced unstable housing and childhood poverty, including periods without working utilities in his mother's home. *Id. ¶¶ 48-49.*

His clinical history reflects longstanding anxiety, hospitalizations at age 10 and in 2024, emergency visits for anxiety-related chest pain, and early diagnoses of anxiety and panic disorder. *Id. ¶¶ 55-56.* His written statement attributes his conduct in part to

emotional dysregulation and anxiety during a crisis, while acknowledging full legal responsibility. *Id.* ¶ *17.*

The record also reflects stabilizing factors developed over the past six years. Mr. Ramirez has been with his partner for six years and lived with her for nearly five, transitioning from homelessness to steady employment and household support. *Id.* ¶¶ *51-52.* His employer confirmed that his position remains open, describing him as "very reliable" and "an integral part" of the shift. *Id.* ¶ *65.* He intends to complete his GED and pursue HVAC training upon release. *Id.* ¶ *63.*

Section 3553(a)(1) directs the Court to evaluate the defendant as he stands before the bench today. That evaluation includes his prior record, but it also encompasses six years of relationship stability, a verified home, confirmed employment, and a documented willingness to engage in treatment.

To the extent treatment is required, federal law prohibits imposing or lengthening a prison term for rehabilitative purposes. *Tapia v. United States*, 564 U.S. 319, 328, 332 (2011). The statutory vehicle for rehabilitation and risk mitigation is supervised release. The defense accepts the PSR's recommended mental-health evaluation and treatment conditions. *Final PSR* ¶ *100.*

Three years of supervised release provides direct, enforceable authority over Mr. Ramirez. It combines mandatory treatment, active digital monitoring, a strict no-contact order, drug testing, and search conditions with immediate return to employment and stable housing. On this record, supervised release is the statutorily designated mechanism to address his mental-health needs and protect the public.

### E. A Concrete Release Plan and Strict Supervision Adequately Address Risk

Mr. Ramirez has a verified release plan. He will return to an established residence in Illinois with his partner of six years, with whom he has lived for nearly five. *Final PSR ¶¶ 51-53.* His employer confirmed to Probation that his position remains available upon release and described Mr. Ramirez as "reliable" and an "integral" part of the shift. *Id.* ¶ *65.* He also intends to complete his GED and pursue HVAC certification. *Id.* ¶ *63.*

Mr. Ramirez has not successfully completed prior probationary terms and committed this offense while under supervision. Final PSR ¶ 95. His latest violation petition was withdrawn during federal custody, and probation was terminated unsuccessfully. Id. ¶ 40. His prior failures call for strict conditions; they do not establish that further confinement is necessary.

The proposed conditions of supervised release provide strict oversight targeted directly at the identified risks: mental-health evaluation and treatment, substance-abuse testing, a no-contact order protecting the agent and the agent's family, digital monitoring software, and a reasonable-suspicion search condition. *Id.* ¶¶ *99-103; Plea Agreement* ¶ *9.*

Three years of supervised release provides the Probation Office with direct authority over Mr. Ramirez's conduct and digital access while allowing him to resume verified employment and enter required treatment. On this record, strict supervision is the appropriate statutory mechanism to maintain public safety and deter future conduct.

**F. The Present Record Contains No Victim Sentencing Position**

The final PSR reports no victim-impact statement or restitution information. Final PSR ¶¶ 14, 86. The defense draws no mitigating inference from that fact and does not presume to speak for the victim. The sentencing recommendation presently before the Court is the joint recommendation of the parties reflected in the plea agreement.

**G. The Joint Recommendation Warrants Substantial Weight**

The plea agreement requires both parties to recommend a sentence of time served with targeted conditions. Plea Agreement ¶ 9. The government made this commitment when the parties anticipated an advisory range of 30 to 37 months. A time-served sentence was therefore always contemplated as a substantial variance.

The subsequent increase in the final Guidelines calculation is entirely a product of criminal-history scoring. It does not change the offense level or the core case-specific facts known when the parties entered the agreement.

The Court should give the government's position substantial weight. The Executive Branch investigated the conduct, evaluated the evidence, charged the offense, and negotiated the plea. Having done so, the government formally committed to recommending time served followed by strict supervision.

The Court exercises independent judgment under § 3553(a). The joint recommendation nevertheless provides substantial institutional confirmation that public safety, deterrence, and just punishment can be achieved without further incarceration.

**H. Aggregate Sentencing Data Lacks Necessary Context**

The PSR cites a national sample of seven defendants with a primary guideline of §2A6.1, a final offense level of 17, and Criminal History Category V, noting an average

sentence of 40 months and a median of 42 months. *Final PSR* ¶ 73. Mr. Ramirez has already served a substantial term of imprisonment. The question under § 3553(a) is whether more is necessary in this case.

A seven-defendant sample provides no factual baseline for comparison. The PSR does not indicate whether those defendants possessed weapons, stalked or physically approached victims, intended to carry out threats, had comparable criminal histories, had verified release plans, or received a joint recommendation for time served.

Section 3553(a)(6) directs the Court to avoid unwarranted disparities among defendants found guilty of similar conduct with similar records. A statistical average cannot establish the warranted comparison when the underlying facts are unknown. The Guidelines themselves treat intent to carry out a threat as a major aggravator under USSG §2A6.1(b)(1), and that enhancement is absent here. Because the PSR does not establish that these anonymous defendants are similarly situated to Mr. Ramirez, the defense requests that the Court assign the aggregate data no independent weight.

Taken together, the variance rests on case-specific considerations not captured by the advisory range: the absence of conduct sufficient to establish an intent to carry out the threat; the limited nature and duration of the charged communications; the substantial custody already served; the remoteness and compressed nature of the criminal history driving Category V; Probation's own recognition that Category V may overstate that history; Mr. Ramirez's demonstrated acceptance of responsibility; his verified housing and immediate employment; his documented treatment needs; the maximum three-year term of federal supervision available by statute; and the parties' joint determination that

additional imprisonment is unnecessary. Considered collectively under § 3553(a), these facts provide specific, individualized reasons for the requested outside-Guidelines sentence.

## IV. PROPOSED SENTENCE

The 271 days Mr. Ramirez has served in federal custody constitute substantial punishment. Additional incarceration is not necessary to protect the public and would disrupt his verified reentry plan. The defense therefore respectfully requests that the Court impose the jointly recommended sentence of time served, followed by three years of supervised release.

The defense supports the targeted conditions of supervision detailed in Paragraphs 99 through 103. Mr. Ramirez accepts mental-health evaluation and treatment if recommended, substance testing, a strict no-contact order, and reasonable-suspicion searches. He also accepts strict computer and internet controls, including active monitoring software. The defense requests only that those digital restrictions be individually tailored and administered in a manner that permits approved employment, HVAC education, treatment, and ordinary reentry needs. See 18 U.S.C. § 3583(d); USSG §5D1.3(b)(1). Those provisions require discretionary conditions to be reasonably related to the statutory purposes of supervision and to involve no greater deprivation of liberty than reasonably necessary.

The record establishes that Mr. Ramirez lacks the ability to pay a fine. *Final PSR* ¶ 70. The defense requests no fine. The present record supports no restitution amount because no victim loss information or restitution request has been provided. If restitution

is later sought, any award must be established in accordance with 18 U.S.C. §§ 3663A and 3664. He will pay the mandatory $100 special assessment.

This proposed sentence is demanding, enforceable, and just. It recognizes the seriousness of the offense, accounts for the substantial punishment already served, and manages future risk through strict federal supervision. The defense respectfully requests that the Court adopt it.

## CONCLUSION

Under 18 U.S.C. § 3553(a), the Court must impose a sentence sufficient, but not greater than necessary. The record supports a sentence that is serious, enforceable, and individualized: 271 days already served, followed by three years of stringent supervision directed at the risks this case actually presents. More incarceration would add severity without adding a demonstrated sentencing purpose. The defense respectfully requests that the Court adopt the joint recommendation and sentence Mr. Ramirez to time served.

Dated: October 7, 2026

Respectfully submitted,

**GAD CRIMINAL DEFENSE, PLLC**

*/s/ Sarah R. Gad*
Sarah R. Gad
Attorney No. 0403328
8 East 25th Street
Minneapolis, MN 55404
Telephone: (612) 412-1710
Email: sarah@gadlawoffice.com
Attorney for Defendant